1  BENJAMIN B. WAGNER
   United States Attorney
2  KYLE REARDON
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, California  95814
4  (916) 554-2782



FILED

OCT 1 0 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,     ) CASE NO. 2:11-CR-0429 KJM
                                  )
12              Plaintiff,        ) VIOLATIONS: 18 U.S.C. § 38(a) and
                                  ) (b)(1) - Conspiracy to Commit
13       v.                       ) Fraud Involving Aircraft Parts in
                                  ) Interstate and Foreign Commerce;
14  WILLIAM HUGH WEYGANDT,        ) 18 U.S.C. § 38(a)(1)(A) - Fraud
    JERRY EDWARD KUWATA,          ) Involving Aircraft Parts in
15  SCOTT HAMILTON DURHAM,        ) Interstate and Foreign Commerce
    CHRISTOPHER WARREN MACQUEEN,  ) (16 Counts); 18 U.S.C.
16  and DOUGLAS ARTHUR JOHNSON,   ) § 38(a)(1)(C) - Fraud Involving
                                  ) Aircraft Parts in Interstate and
17              Defendants.       ) Foreign Commerce (4 Counts);
                                  ) 18 U.S.C. § 1341 - Mail Fraud
18                                ) (15 Counts);18 U.S.C. § 38(d),
                                  ) 18 U.S.C. § 981(a)(1)(C), &
19                                ) 28 U.S.C. § 2461(c) -
                                  ) Criminal Forfeiture
20  _____)

21
            S U P E R S E D I N G  I N D I C T M E N T
22

23  COUNT ONE:  [18 U.S.C. § 38(a), and (b)(1) - Conspiracy to
                 Commit Fraud Involving Aircraft Parts in
24               Interstate and Foreign Commerce]

25       The Grand Jury charges:

26                    WILLIAM HUGH WEYGANDT,
                      JERRY EDWARD KUWATA,
27                    SCOTT HAMILTON DURHAM,
                 CHRISTOPHER WARREN MACQUEEN, and
28                  DOUGLAS ARTHUR JOHNSON,

                              1

1 defendants herein, as follows:

2                          I. INTRODUCTION

3 1.  At all times relevant to this superseding indictment:

4       (a) The Federal Aviation Administration (hereinafter "FAA")
5 was an agency within the United States Department of
6 Transportation charged with regulating air travel.

7       (b) Regulations concerning aircraft maintenance were
8 published by the FAA at Title 14, Code of Federal Regulations
9 ("C.F.R."). Among others things, these regulations addressed
10 record-keeping requirements for the repair and overhaul of
11 aircraft parts, and the use of approved and unapproved parts for
12 those repairs and overhauls.

13       (c) WECO Aerospace Systems, Inc. (hereinafter "WECO") was a
14 certified FAA repair station founded in 1974 in Burbank,
15 California. In 1994, WECO established a second facility in
16 Lincoln, California, that ultimately became the company
17 headquarters. WECO possessed an Air Agency Certificate from the
18 FAA authorizing it to maintain and rebuild specified aircraft
19 component parts, and to approve the return of the parts to
20 service in accordance with 14 C.F.R. § 43.7.

21       (d) By 2005, defendant WILLIAM HUGH WEYGANDT, a resident of
22 Granite Bay, California, was the president and sole owner of
23 WECO. At that time, defendant WILLIAM HUGH WEYGANDT was
24 approached about selling his company. In 2006, he agreed to sell
25 WECO for approximately $15 million, and a contract for sale was
26 signed in January 2007. The closing date for the sale was March
27 2007. Following the sale of WECO, defendant WILLIAM HUGH
28 WEYGANDT continued working as President until approximately

                                  2

1 | February 2008.

2 | (e) In 2007, WECO employed approximately 75 people. In
3 | addition to defendant WILLIAM HUGH WEYGANDT, those employees
4 | included the following individuals:

5 | i. Defendant JERRY EDWARD KUWATA, a resident of Granite
6 | Bay, California, was the WECO Operations Manager responsible for
7 | coordinating the processing of work at WECO and directing
8 | personnel as to proper procedures and protocols.

9 | ii. Michael Dennis Maupin, a resident of Arbuckle,
10 | California, was the WECO Quality Assurance Manager responsible
11 | for establishing inspection standards, methods, and procedures
12 | used by WECO to comply with FAA regulations and manufacturer
13 | specifications. Michael Dennis Maupin is charged elsewhere.

14 | iii. Defendant SCOTT HAMILTON DURHAM, a resident of
15 | Roseville, California, was the WECO Customer Service Manager.

16 | iv. Defendant CHRISTOPHER WARREN MACQUEEN, a resident
17 | of Lincoln, California, was the supervisor in charge of the WECO
18 | Lincoln rotables section.

19 | v. Defendant DOUGLAS ARTHUR JOHNSON, a resident of
20 | Granite Bay, California, was the supervisor in charge of the WECO
21 | Lincoln converter section.

22 | vi. Anthony Vincent Zito, a resident of Saugus,
23 | California, was the WECO Burbank Repair Station Manager. Anthony
24 | Vincent Zito is charged elsewhere.

25 | (f) As part of its operations, WECO Lincoln held daily
26 | managers' meetings to discuss operations at the company. These
27 | meetings were generally attended by defendants WILLIAM HUGH
28 | WEYGANDT, JERRY EDWARD KUWATA, SCOTT HAMILTON DURHAM, CHRISTOPHER

3

1  WARREN MACQUEEN, DOUGLAS ARTHUR JOHNSON, Michael Dennis Maupin,
2  and others known and unknown to the Grand Jury.

3      (g) Pursuant to 14 C.F.R. § 145.207, a certified FAA repair
4  station was required to prepare and maintain a Repair Station
5  Manual acceptable to the FAA.  The contents of this manual had to
6  include, among other things, a management chart, and a
7  description of the repair station's operations, including its
8  equipment and facilities.

9      (h) Pursuant to 14 C.F.R. § 145.211, a certified FAA repair
10  station was required to establish and maintain a quality control
11  system, and prepare and keep current a Quality Control Manual.
12  The Quality Control Manual had to include, among other things, a
13  description of the system and procedures for "inspecting incoming
14  raw materials to ensure acceptable quality," "performing final
15  inspection and return to service of maintained articles," and
16  "taking corrective action on deficiencies."

17      (i) In order to receive and maintain its Air Agency
18  Certificate, WECO submitted to the FAA a Repair Station Manual
19  that detailed the duties of key personnel, procedures that WECO
20  employed to ensure that its repairs and overhauls would be done
21  in a safe and consistent manner in accordance with FAA
22  regulations, Component Maintenance Manuals, technical orders, and
23  airworthiness directives.  This Repair Station Manual was
24  combined with WECO's Quality Control Manual and was regularly
25  updated.

26      (j) Under their Air Agency Certificate, WECO was licensed to
27  work on only designated aircraft component parts.  Pursuant to
28  this authority, and under the oversight of the FAA, WECO

4

Lincoln's primary business was: the repair and overhaul of starter generators, alternators, and rotary or linear actuators (hereinafter "rotables"); converters; and flight instruments. WECO Burbank was certified to repair and overhaul only rotables.

(k) Under Federal Aviation Regulation (FAR) 145.3, an accountable manager was "the person designated by the certificated repair station who is responsible for and has the authority over all repair station operations that are conducted under part 145, including ensuring that repair station personnel follow the regulations and serving as the primary contact with the FAA."

(l) In its Repair Station Manual/Quality Control Manual dated August 7, 2007, WECO represented the following to the FAA:

i. The President and Accountable Officer for WECO was WILLIAM HUGH WEYGANDT, and that he was "responsible for the overall operation of WECO Systems, Inc., in accordance with the applicable CFR's."

ii. WECO consisted of a "single level, steel reinforced, concrete walled building with internal structures for segregation of various sections of the shop."

iii. "The general repair, overhaul or alteration of products would be performed in accordance with the current Federal Aviation Administration Regulations, current manufacturer overhaul manuals, drawing packages with industry general shop practices, service bulletins, related Civil Aeronautics Manuals, technical orders, airworthiness directives or other technical data approved by the Administrator [of the FAA] for the particular Accessory or Instrument class rating. This repair

5

station ... would not maintain or alter any article for which it is rated if it required technical data, equipment, materials, facilities or trained personnel that were not available."

iv. "All units which require test or calibration after assembly would be given such a test by the technician and witnessed by the inspector as deemed necessary."

(m) The FAA permitted only approved parts to be used in repairs and overhauls. An approved part was any part produced in accordance with FAA-mandated processes under 14 C.F.R., Part 21. An unapproved part was a part that did not meet the definition of an approved part because it was not produced in accordance with the FAA mandate for that part.

(n) Data plates were affixed to some FAA-approved parts. The data plates were used by the FAA to track aircraft parts and to maintain accountability of those parts.

(o) Approved parts manufacturers prepared Component Maintenance Manuals (hereinafter "CMM") that directed how repair stations were to perform repairs and overhauls on that manufacturer's parts. Component Maintenance Manuals were approved by the FAA. Pursuant to 14 C.F.R. § 43.13, unless expressly excused by the FAA, all repairs and overhauls were to be performed in accordance with the CMM.

(p) Under 14 C.F.R. § 43.9, each WECO technician who performed a repair or overhauls of an aircraft component part was required to make an entry in the aircraft or component part's maintenance record. The entry was required to have a description of the work performed, the date the work was completed, the name of the person who performed the work, and the name and signature

6

1 | of the official who approved the repair or overhaul.

2 | (q) Federal Aviation Administration Form 8130-3 (hereinafter
3 | "8130-3") was an airworthiness approval tag for aircraft parts,
4 | products, and appliances. A completed 8130-3 contained all of
5 | the information required under 14 C.F.R. § 43.9, and signified
6 | that the component part was properly repaired or overhauled,
7 | inspected, and approved for return to service. Completing an
8 | 8130-3 when the aircraft component part was not overhauled in
9 | accordance with the CMM was prohibited by 14 C.F.R. § 43.2.
10 | Making any fraudulent or intentionally false entry on an 8130-3
11 | or other form used to comply with maintenance record-keeping
12 | requirements was prohibited by 14 C.F.R. § 43.12.

13 | (r) Pursuant to 14 C.F.R. § 145.109, certified repair
14 | stations were required to have the equipment, tools, and
15 | materials necessary to perform the maintenance permitted by their
16 | Air Agency Certificate. Certified repair stations were also
17 | required to ensure that all testing and inspection equipment and
18 | tools used to make an airworthiness determination were calibrated
19 | to a standard acceptable to the FAA. Finally, the equipment,
20 | tools, and materials used by the repair station were required to
21 | be those recommended by the manufacturer, or equivalent to those
22 | recommended by the manufacturer, and acceptable to the FAA.

23 | (s) A converter was a component part that supplied
24 | electrical power to all systems in an aircraft, including
25 | avionics and galley systems. WECO Lincoln performed repairs of
26 | Honeywell 38B93-2C and 4B converters. The CMM prepared by
27 | Honeywell and approved by the FAA for repairs to these particular
28 | converters required that they be subjected to multiple tests in

7

order to insure that they would perform reliably when reinstalled into an aircraft and used during flight. Tests required by the CMM for a Honeywell 38B93-2C and 4B converter repair and overhaul included a vibration test, a DC dielectric test, and a short circuit test.

i. A vibration test induced vibration and environmental changes to the converter to simulate extreme flight conditions. WECO Lincoln did not have equipment capable of performing the vibration test required by the CMM.

ii. A DC dielectric test ensured that there was sufficient isolation between electrical components in order to guarantee that current would not flow in unintended ways. WECO Lincoln did not have equipment capable of performing the DC dielectric test required by the CMM.

iii. A converter short circuit test verified that, under certain conditions, the converter would produce an adequate amount of current to power an aircraft. WECO Lincoln did not perform this test.

(t) A generator was a component part that was normally mounted on the aircraft engine or auxiliary power plant, converting a mechanical drive into an electrical output. WECO Lincoln repaired and overhauled the Honeywell 28B421 AC generator. WECO Lincoln and WECO Burbank repaired and overhauled the Aircraft Parts Corporation 150SG generator, and the Goodrich 23080 series generator. Tests required by the CMM for the Honeywell 28B421 series AC generators included the balancing of armatures and rotors, the short circuit test, and the overspeed (varidrive) test. Tests required by the CMM for the Aircraft

8

Parts Corporation 150SG starter generator included the magnaflux test (also known as the magnetic particle/non-destructive test), and the dynamometer test. Tests required for the Goodrich 23080 series starter generator included the magnaflux test, and the overspeed (varidrive) test.

i. Proper balancing of armatures and rotors required use of a dynamic balancing machine as well as tungsten and lead wire to ensure that the rotable did not produce excessive vibration at high speeds. WECO Lincoln did not have a dynamic balancing machine capable of conducting the balancing test and did not use tungsten wire as required by the CMM.

ii. The generator short circuit test verified that, under certain conditions, the rotable would produce the current required by the aircraft. WECO Lincoln did not have equipment capable of performing this testing required by the CMM.

iii. The overspeed test simulated the engine drive speed and verified a load capacity of the rotable at 14,000 revolutions per minute. The tests also checked for overheating and out-of-tolerance vibration. WECO Lincoln did not have a varidrive capable of conducting the overspeed test of AC generators as required by the CMM. WECO Burbank did not have a varidrive capable of performing the overspeed testing required by the CMM for any of the generators that it repaired and maintained.

iv. The magnaflux test detected surface and subsurface defects in ferrous materials and verified that there were no hidden flaws in the rotable that might cause the shaft of the rotable to shatter while in use. Neither WECO Lincoln nor WECO

9

Burbank had the capability to perform a magnaflux test at their repair facilities, and neither sent out starter generators for magnaflux testing by an outside agency as required by the CMM.

v. The dynamometer test checked the mechanical integrity of a rotable, and its output torque, to ensure that the part had the ability to start an engine or auxiliary power unit. WECO Burbank did not have a dynamometer capable of performing this testing required by the CMM.

## II. THE CONSPIRACY

2. Beginning on or about a date unknown to the Grand Jury, but no later than on or about October 26, 2006, and continuing to on or about February 15, 2008, in Placer County, State and Eastern District of California, and elsewhere, defendants WILLIAM HUGH WEYGANDT, JERRY EDWARD KUWATA, SCOTT HAMILTON DURHAM, CHRISTOPHER WARREN MACQUEEN, and DOUGLAS ARTHUR JOHNSON, and others known and unknown to the Grand Jury, knowingly, and with the intent to defraud, combined, conspired, and agreed with each other, in and affecting interstate and foreign commerce, to:

(a) falsify and conceal material facts concerning aircraft parts;

(b) make materially fraudulent representations concerning aircraft parts;

(c) make and use materially false writings, entries, certifications, documents, records, data plates, labels, and electronic communications concerning aircraft parts; and

(d) export from and import and introduce into the United States, sell, trade, and install on and in aircraft, aircraft parts using and by means of fraudulent representations,

10

1 documents, records, labels, certificates, depictions, data
2 plates, and electronic communications, all in violation of Title
3 18, United States Code, Section 38(a).

### III. OBJECTS OF THE CONSPIRACY

3. The objects of the conspiracy were to defraud the FAA and
WECO customers by:

(a) Falsifying and concealing material facts regarding the
use of unapproved parts used in repairs and overhauls of rotables
and converters;

(b) Submitting fraudulent 8130-3s which stated that repairs
and overhauls had been done in compliance with FAA regulations
when they had not; and

(c) Conducting repairs and overhauls of rotables and
converters with less expensive and unapproved parts, and without
the use of costly required tests and test equipment.

### IV. MANNER AND MEANS

4. The conspiracy was carried out, in part, as follows:

(a) Customers sent converters and rotables in need of repair
and overhaul to WECO through Federal Express ("FedEx"), United
Parcel Service ("UPS"), DHL, and other private and commercial
interstate carriers. These component parts were received at
WECO's shipping department and sent to customer service.

(b) Defendant SCOTT HAMILTON DURHAM, and others known and
unknown to the Grand Jury, received the component part and
created a work order for the repair and overhaul. The work order
was sent to the appropriate shop within the WECO facility along
with the component.

(c) WECO technicians received the component part from

. 11

1  customer service, tore it down, and evaluated it. The technician
2  noted his findings on the work order and identified a list of
3  parts needed to make the repair. The work order was then sent to
4  WECO purchasing so that the cost of the repair could be
5  determined. Individuals known and unknown to the Grand Jury
6  informed the customer of the price of the expected repair or
7  overhaul, and received approval from the customer to proceed with
8  the repair or overhaul.

9      (d) WECO Lincoln maintained a facility known as "Warehouse
10  4." Warehouse 4 was used by WECO Lincoln to store surplus parts
11  that were used in repairs and overhauls. Defendants WILLIAM HUGH
12  WEYGANDT, JERRY EDWARD KUWATA, and others known and unknown to
13  the Grand Jury, had access to Warehouse 4. Warehouse 4 was not
14  disclosed to the FAA in WECO's Repair Station Manual/Quality
15  Assurance Manual.

16      (e) After receiving approval from the customer to conduct
17  the repair, WECO gathered the necessary parts. These parts came
18  from outside vendors, or from inventory stored at both WECO
19  repair facilities. Specifically, defendants WILLIAM HUGH
20  WEYGANDT, JERRY EDWARD KUWATA, SCOTT HAMILTON DURHAM, CHRISTOPHER
21  WARREN MACQUEEN, DOUGLAS ARTHUR JOHNSON, Michael Dennis Maupin,
22  Anthony Vincent Zito, and others known and unknown to the Grand
23  Jury, did some or all of the following actions with regards to
24  the parts used in repairs and overhauls:

25          i. Defendants WILLIAM HUGH WEYGANDT, JERRY EDWARD
26  KUWATA, and others known and unknown to the Grand Jury, purchased
27  unapproved surplus parts to be used in repairs and overhauls of
28  converters and rotables. Many of these parts were stored in

12

1 Warehouse 4 and other locations unknown to the FAA.

2 ii. Defendants JERRY EDWARD KUWATA, CHRISTOPHER WARREN
3 MACQUEEN, and others known and unknown to the Grand Jury,
4 gathered unapproved parts from Warehouse 4, and directed WECO
5 technicians to use these parts in repairs and overhauls.

6 iii. Defendant CHRISTOPHER WARREN MACQUEEN directed a
7 WECO technician to use an unapproved part in a windshield wiper
8 motor overhaul and directed the technician to proceed with the
9 overhaul following installation of the unapproved part into the
10 windshield wiper motor.

11 iv. Defendant CHRISTOPHER WARREN MACQUEEN directed WECO
12 technicians to swap the data plates of units awaiting repair with
13 repaired units that WECO had in its inventory.

14 v. Defendants JERRY EDWARD KUWATA, SCOTT HAMILTON
15 DURHAM, and others known and unknown to the Grand Jury, returned
16 converters and rotables to customers knowing that unapproved
17 parts had been used in their repair and overhaul.

18 (f) In addition to using unapproved parts in repairs and
19 overhauls, defendants WILLIAM HUGH WEYGANDT, JERRY EDWARD KUWATA,
20 SCOTT HAMILTON DURHAM, CHRISTOPHER WARREN MACQUEEN, DOUGLAS
21 ARTHUR JOHNSON, Michael Dennis Maupin, Anthony Vincent Zito, and
22 others known and unknown to the Grand Jury, supervised and
23 directed repairs and overhauls that did not comply with the CMM
24 for those component parts. Specifically, defendants WILLIAM HUGH
25 WEYGANDT, JERRY EDWARD·KUWATA, SCOTT HAMILTON DURHAM, CHRISTOPHER
26 WARREN MACQUEEN, DOUGLAS ARTHUR JOHNSON, Michael Dennis Maupin,
27 Anthony Vincent Zito, and others known and unknown to the Grand
28 Jury, engaged in some or all of the following conduct which was

13

contrary to the requirements contained with the relevant CMMs:

i. Defendants WILLIAM HUGH WEYGANDT, JERRY EDWARD KUWATA, SCOTT HAMILTON DURHAM, and DOUGLAS ARTHUR JOHNSON, Michael Dennis Maupin, and other known and unknown to the Grand Jury, directed and caused WECO Lincoln technicians to complete converter repairs, sign 8130-3s, and return parts to customers, with knowledge that WECO Lincoln had not performed vibration tests, DC dielectric tests, and short circuit tests, in accordance with the CMM for converter repairs.

ii. Defendants WILLIAM HUGH WEYGANDT, JERRY EDWARD KUWATA, SCOTT HAMILTON DURHAM, and CHRISTOPHER WARREN MACQUEEN, Michael Dennis Maupin, and other known and unknown to the Grand Jury, directed and caused WECO Lincoln technicians to complete repairs and overhauls of Honeywell 28B421 AC generators, Aircraft Parts Corporation 150SG series starter generators, and Goodrich 23 Series starter generators; signed 8130-3s for those generators; and then returned those generators to customers, with knowledge that:

(1) WECO Lincoln had not balanced armatures and rotors, and had not performed short circuit tests, and overspeed (varidrive) tests, as required by the CMM for Honeywell 28B421 AC generators;

(2) WECO Lincoln had not performed magnaflux and dynamometer tests, as required by the CMM for Aircraft Parts Corporation 150 SG series starter generators; and

(3) WECO Lincoln had not performed magnaflux tests required by the CMM for Goodrich 23 series starter generators.

iii. Defendants WILLIAM HUGH WEYGANDT, JERRY EDWARD

14

1  KUWATA, Anthony Vincent Zito, and others known and unknown to the
2  Grand Jury, directed and caused WECO Burbank technicians to
3  complete repairs and overhauls of Aircraft Parts Corporation
4  150SG series starter generators, and Goodrich 23 series starter
5  generators, sign 8130-3s for those generators, and return those
6  generators to customers, with knowledge that:

7              (1) WECO Burbank had not performed magnaflux and
8  dynamometer tests, as required by the CMM for Aircraft Parts
9  Corporation 150SG series starter generators; and

10             (2) WECO Burbank had not performed magnaflux and
11 overspeed (varidrive) tests, as required by the CMM for Goodrich
12 23 series starter generators.

13        (g) Defendants CHRISTOPHER WARREN MACQUEEN, DOUGLAS ARTHUR
14 JOHNSON, and others known and unknown to the Grand Jury,
15 conducted final inspections on repaired and overhauled component
16 parts, and falsely certified on 8130-3s that the parts had been
17 repaired and overhauled in compliance with Title 14, Code of
18 Federal Regulations, Part 43, and the CMM.

19        (h) Following completion of the repair or overhaul, WECO
20 returned the component parts to customers through FedEx, UPS,
21 DHL, and other private and commercial interstate carriers, for
22 reinstallation by the customers onto their aircraft.

23                          V.   OVERT ACTS

24 5.    In furtherance of the conspiracy, and to effect the objects
25 thereof, defendants WILLIAM HUGH WEYGANDT, JERRY EDWARD KUWATA,
26 SCOTT HAMILTON DURHAM, CHRISTOPHER WARREN MACQUEEN, and DOUGLAS
27 ARTHUR JOHNSON, and others known and unknown to the Grand Jury,
28 committed, among others, the following overt acts in the State

15

1  and Eastern District of California and elsewhere:

2      (a) On or about November 10, 2006, in Lincoln, California,
3  defendant DOUGLAS ARTHUR JOHNSON signed an 8130-3 certifying that
4  the repair of a Honeywell 38B93-4B converter, work order L27864,
5  had been done in compliance with Title 14, Code of Federal
6  Regulation, Part 43, when defendant DOUGLAS ARTHUR JOHNSON knew,
7  in fact, it had not.

8      (b) On or about December 12, 2006, in Lincoln, California,
9  defendant CHRISTOPHER WARREN MACQUEEN signed an 8130-3 certifying
10 that the repair of a Honeywell 28B421 starter generator, work
11 order L28252, had been done in compliance with Title 14, Code of
12 Federal Regulation, Part 43, when defendant CHRISTOPHER WARREN
13 MACQUEEN knew, in fact. it had not.

14      (c) On or about August 7, 2007, defendants WILLIAM HUGH
15 WEYGANDT, and another known the Grand Jury, signed the WECO
16 Repair Station Manual/Quality Assurance Manual which failed to
17 disclose Warehouse 4.

18      (d) On or about August 9, 2007, defendants JERRY EDWARD
19 KUWATA, and others known and unknown to the Grand Jury, removed
20 unapproved parts from generators at WECO Burbank, and installed
21 them into customer units at the facility.

22      (e) On or about August 10, 2007, in Lincoln, California,
23 defendant SCOTT HAMILTON DURHAM instructed a WECO technician to
24 remove the data plate from an unrepaired generator stator, attach
25 it onto a repaired generator stator, and install the repaired
26 generator stator into a generator to which it did not belong.

27      (f) On or about August 14, 2007, in Lincoln, California,
28 defendant JERRY EDWARD KUWATA retrieved from Warehouse 4 an

16

1 | unapproved armature that was then installed during a DC motor
 2 | overhaul, work order L31339.

 3 | (g) On or about August 14, 2007, in Lincoln, California,
 4 | defendant JERRY EDWARD KUWATA retrieved from Warehouse 4 an
 5 | unapproved flange that was then installed during a DC motor
 6 | overhaul, work order L31341.

 7 | (h) On or about August 17, 2007, in Lincoln, California,
 8 | defendant JERRY EDWARD KUWATA retrieved from Warehouse 4
 9 | unapproved capacitors that were then installed during a converter
10 | overhaul, work order L33176.

11 | (i) On or about August 21, 2007, in Lincoln, California,
12 | defendant JERRY EDWARD KUWATA retrieved from Warehouse 4 an
13 | unapproved flange that was then installed during a DC motor
14 | overhaul, work order L30720.

15 | (j) Between on or about September 12, 2007, and on or about
16 | September 13, 2007, in Lincoln, California, defendant CHRISTOPHER
17 | WARREN MACQUEEN fabricated an end bell locator pin from a paper
18 | clip, and installed it on a windshield wiper motor, work order
19 | L31167.

20 | (k) On or about September 14, 2007, in Lincoln, California,
21 | defendant CHRISTOPHER WARREN MACQUEEN, and others known to the
22 | Grand Jury, caused to be sent through UPS, a windshield wiper
23 | motor that had been repaired using a paper clip.

24 | (l) On or about October 11, 2007, in Lincoln, California,
25 | defendant CHRISTOPHER WARREN MACQUEEN directed a WECO technician
26 | to remove the data plate from an unrepaired part, attach it onto
27 | a repaired part, and install the repaired part into a motor to
28 | which it did not belong, work order L33617.

17

All in violation of Title 18, United States Code, Section 38(a) and (b)(1).

COUNTS TWO THROUGH NINE: [18 U.S.C. § 38(a)(1)(A) - Fraud Involving Aircraft Parts in Interstate and Foreign Commerce]

The Grand Jury further charges: T H A T

JERRY EDWARD KUWATA,
SCOTT HAMILTON DURHAM, and
CHRISTOPHER WARREN MACQUEEN, and
DOUGLAS ARTHUR JOHNSON,

defendants herein, on or about the dates set forth below, in Placer County, State and Eastern District of California, did, in and affecting interstate commerce, knowingly and with the intent to defraud, falsify and conceal a material fact concerning an aircraft part, to wit, that the aircraft part had been repaired and overhauled in compliance with the CMM, when in truth and in fact, the part had not been so repaired, as further set forth below:

| Count | Date | Work Order | Part |
|-------|------|-----------|------|
| 2 | October 26, 2006 | L27249 | Converter |
| 3 | October 31, 2006 | L27688 | Converter |
| 4 | November 10, 2006 | L27864 | Converter |
| 5 | December 1, 2006 | L28349 | Starter Generator |
| 6 | December 11, 2006 | L28252 | AC Generator |
| 7 | December 12, 2006 | L28409 | Converter |
| 8 | March 2, 2007 | L29498 | Converter |
| 9 | March 2, 2007 | L29755 | Starter Generator |

all in violation of Title 18, United States Code, Section 38(a)(1)(A).

///

18

COUNTS TEN THROUGH TWELVE:    [18 U.S.C. § 38(a)(1)(C) - Fraud
                              Involving Aircraft Parts in
                              Interstate and Foreign Commerce]

The Grand Jury further charges: T H A T

DOUGLAS ARTHUR JOHNSON,

defendant herein, on or about the dates set forth below, in Placer County, State and Eastern District of California, did, in and affecting interstate commerce, knowingly and with the intent to defraud, make and use, and cause to be made and used, a materially false writing, entry, certification, document, and record concerning an aircraft part, to wit, an FAA Form 8130-3, which falsely stated that the repair of Honeywell 38B93-4B converter, had been done in compliance with Title 14, Code of Federal Regulation, Part 43, when in truth and in fact, the part had not been repaired in compliance with the regulation, as set forth below:

| Count | Date | Work Order |
|-------|------|------------|
| 10 | November 10, 2006 | L27864 |
| 11 | December 12, 2006 | L28409 |
| 12 | March 1, 2007 | L29498 |

all in violation of Title 18, United States Code, Section 38(a)(1)(C).

COUNT THIRTEEN:  [18 U.S.C. § 38(a)(1)(C) - Fraud Involving
                 Aircraft Parts in Interstate and Foreign
                 Commerce]

The Grand Jury further charges: T H A T

CHRISTOPHER WARREN MACQUEEN,

defendant herein, on or about December 12, 2006, in Placer County, State and Eastern District of California, did, in and affecting interstate commerce, knowingly and with the intent to

19

defraud, make and use, and cause to be made and used, a
materially false writing, entry, certification, document, and
record concerning an aircraft part, to wit, an FAA Form 8130-3,
which falsely stated that the repair of a Honeywell 28B421-2C
generator, work order L28252, had been done in compliance with
Title 14, Code of Federal Regulation, Part 43, when in truth and
in fact, the part had not been repaired in compliance with the
regulation, in violation of Title 18, United States Code, Section
38(a)(1)(C).

COUNT FOURTEEN:  [18 U.S.C. § 38(a)(1)(A) - Fraud Involving
                 Aircraft Parts in Interstate and Foreign
                 Commerce]

The Grand Jury further charges: T H A T

JERRY EDWARD KUWATA,

defendant herein, on or about August 14, 2007, in Placer County,
State and Eastern District of California, did, in and affecting
interstate commerce, knowingly and with the intent to defraud,
falsify and conceal a material fact concerning an aircraft part,
to wit, that an unapproved armature for a DC motor, part number
9696-300, had been installed on WECO work order L31339, in
violation of Title 18, United States Code, Sections 2 and
38(a)(1)(A).

COUNT FIFTEEN:  [18 U.S.C. § 38(a)(1)(A) - Fraud Involving
                Aircraft Parts in Interstate and Foreign
                Commerce]

The Grand Jury further charges: T H A T

JERRY EDWARD KUWATA,

defendant herein, on or about August 14, 2007, in Placer County,
State and Eastern District of California, did, in and affecting
interstate commerce, knowingly and with the intent to defraud,

20

falsify and conceal a material fact concerning an aircraft part, to wit, that an unapproved flange for a DC motor, part number 9696-100, had been installed in connection with WECO work order L31341, in violation of Title 18, United States Code, Sections 2 and 38(a)(1)(A).

COUNT SIXTEEN:   [18 U.S.C. § 38(a)(1)(A) - Fraud Involving
                 Aircraft Parts in Interstate and Foreign
                 Commerce]

The Grand Jury further charges: T H A T

JERRY EDWARD KUWATA,

defendant herein, on or about August 17, 2007, in Placer County, State and Eastern District of California, did, in and affecting interstate commerce, knowingly and with the intent to defraud, falsify and conceal a material fact concerning an aircraft part, to wit, that unapproved capacitors for a converter, part number 1010037, had been installed in connection with WECO work order L33176, in violation of Title 18, United States Code, Sections 2 and 38(a)(1)(A).

COUNT SEVENTEEN:   [18 U.S.C. § 38(a)(1)(A) - Fraud Involving
                   Aircraft Parts in Interstate and Foreign
                   Commerce]

The Grand Jury further charges: T H A T

JERRY EDWARD KUWATA,

defendant herein, on or about August 21, 2007, in Placer County, State and Eastern District of California, did, in and affecting interstate commerce, knowingly and with the intent to defraud, falsify and conceal a material fact concerning an aircraft part, to wit, that an unapproved flange for a DC motor, part number 9696-100, had been installed in connection with WECO work order L30720, in violation of Title 18, United States Code, Sections 2

21

1  and 38(a)(1)(A).

2  COUNT EIGHTEEN: [18 U.S.C. § 38(a)(1)(A) - Fraud Involving
3                  Aircraft Parts in Interstate and Foreign
                   Commerce]

4      The Grand Jury further charges: T H A T

5                   CHRISTOPHER WARREN MACQUEEN,

6  defendant herein, on or about August 21, 2007, in Placer County,

7  State and Eastern District of California, did, in and affecting

8  interstate commerce, knowingly and with the intent to defraud,

9  falsify and conceal a material fact concerning an aircraft part,

10 to wit, that an unapproved capacitor block for a DC generator,

11 part number 1590631-1, had been installed in connection with WECO

12 work order L31311, in violation of Title 18, United States Code,

13 Sections 2 and 38(a)(1)(A).

14 COUNT NINETEEN: [18 U.S.C. § 38(a)(1)(A) - Fraud Involving
15                  Aircraft Parts in Interstate and Foreign
                   Commerce]

16     The Grand Jury further charges: T H A T

17                  CHRISTOPHER WARREN MACQUEEN,

18 defendant herein, on or about August 31, 2007, in Placer County,

19 State and Eastern District of California, did, in and affecting

20 interstate commerce, knowingly and with the intent to defraud,

21 falsify and conceal a material fact concerning an aircraft part,

22 to wit, that an unapproved terminal block, part number P058212,

23 an unapproved transformer cover, part number P500554, and an

24 unapproved bearing cap, part number P064025, had been reinstalled

25 on an alternator in connection with WECO work order L33102, in

26 violation of Title 18, United States Code, Sections 2 and

27 38(a)(1)(A).

28 ///

                                22

COUNT TWENTY:   [18 U.S.C. § 38(a)(1)(A) - Fraud Involving
                Aircraft Parts in Interstate and Foreign
                Commerce]

The Grand Jury further charges: T H A T

CHRISTOPHER WARREN MACQUEEN,

defendant herein, between on or about September 12, 2007, and on or about September 13, 2007, in Placer County, State and Eastern District of California, did, in and affecting interstate commerce, knowingly and with the intent to defraud, falsify and conceal a material fact concerning an aircraft part, to wit, that an unapproved end bell locator pin fashioned from a paper clip had been installed on a windshield wiper motor, WECO work order L31167, in violation of Title 18, United States Code, Sections 2 and 38(a)(1)(A).

COUNT TWENTY-ONE:   [18 U.S.C. § 38(a)(1)(A) - Fraud Involving
                    Aircraft Parts in Interstate and Foreign
                    Commerce]

The Grand Jury further charges: T H A T

CHRISTOPHER WARREN MACQUEEN,

defendant herein, on or about October 11, 2007, in Placer County, State and Eastern District of California, did, in and affecting interstate commerce, knowingly and with the intent to defraud, falsify and conceal a material fact concerning an aircraft part, to wit, that an unapproved motor stator had been installed in connection with WECO work order L33617, in violation of Title 18, United States Code, Sections 2 and 38(a)(1)(A).

///
///
///
///

23

1  COUNTS TWENTY-TWO THROUGH THIRTY-SIX:  [18 U.S.C. § 1341 -
                                                Mail Fraud]
2
        The Grand Jury further charges:
3
                        JERRY EDWARD KUWATA,
4                      SCOTT HAMILTON DURHAM,
                 CHRISTOPHER WARREN MACQUEEN, and
5                     DOUGLAS ARTHUR JOHNSON,

6  defendants herein, as follows:

7        1.   Paragraph 1 of Count 1 of this Superseding Indictment is

8  re-alleged and incorporated herein as if fully set forth.

9        2.   Between on or about a date unknown to the Grand Jury but

10 no later than October 26, 2006, and on or about February 15,

11 2008, in Placer County, State and Eastern District of California,

12 and elsewhere, defendants did devise, intend to devise, and

13 participate in a material scheme and artifice to defraud the FAA

14 and WECO customers, and to obtain money from WECO customers, by

15 means of material false and fraudulent pretenses and

16 representations.

17       3.   The manner and means of the scheme to defraud are set

18 forth in subparagraphs 4(a)-(h) of Count 1 of this Superseding

19 Indictment, and are re-alleged and incorporated herein as if

20 fully set forth.

21       4. On or about the dates set forth below, for the purpose of

22 executing such scheme, and attempting to do so, defendants did

23 deposit and cause to be deposited, matters and things to be sent

24 from WECO Lincoln, and delivered by private and commercial

25 interstate carriers to aircraft parts owners, as set forth below:

26 ///

27 ///

28 ///

24

| Count | Date | Work Order | Part | Delivery Location |
|-------|------|------------|------|-------------------|
| 22 | October 26, 2006 | L27249 | Converter | Long Beach, CA |
| 23 | October 31, 2006 | L27688 | Converter | Dallas, TX |
| 24 | November 10, 2006 | L27864 | Converter | Savannah, GA |
| 25 | December 1, 2006 | L28349 | Starter Generator | Juneau, AK |
| 26 | December 12, 2006 | L28252 | AC Generator | Moonachie, NJ |
| 27 | December 12, 2006 | L28409 | Converter | Savannah, GA |
| 28 | March 2, 2007 | L29498 | Converter | Long Beach, CA |
| 29 | March 2, 2007 | L29755 | Starter Generator | Hayward, CA |
| 30 | August 14, 2007 | L31339 | Armature on a DC Motor | El Paso, TX |
| 31 | August 14, 2007 | L31341 | Flange on a DC Motor | El Paso, TX |
| 32 | August 17, 2007 | L33176 | Converter | Chino, CA |
| 33 | August 21, 2007 | L30720 | Flange on a DC Motor | Van Nuys, CA |
| 34 | August 22, 2007 | L31311 | Capacitor Block on a DC Generator | Allentown, PA |
| 35 | September 7, 2007 | L33102 | Alternator | Miami, FL |
| 36 | September 14, 2007 | L31167 | End Bell Idler Locator Pin on a Windshield Wiper Motor | Indianapolis, IN |

All in violation of Title 18, United States Code, Sections 2 and 1341.

///

///

25

FORFEITURE ALLEGATION: [18 U.S.C. § 38(d), 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Upon conviction of one or more of the offenses alleged in Counts One through Twenty-One of this Superseding Indictment, defendants WILLIAM HUGH WEYGANDT, JERRY EDWARD KUWATA, SCOTT HAMILTON DURHAM, CHRISTOPHER WARREN MACQUEEN, and DOUGLAS ARTHUR JOHNSON shall forfeit to the United States, pursuant to 18 U.S.C. § 38(d), all property which constitutes or is derived from proceeds obtained, directly or indirectly, as a result of such violations and any property used, or intended to be used in any manner, to commit or facilitate the commission of such violations.

2. Upon conviction of one or more of the offenses alleged in Counts Twenty-Two through Thirty-Six of this Superseding Indictment, defendants JERRY EDWARD KUWATA, SCOTT HAMILTON DURHAM, CHRISTOPHER WARREN MACQUEEN, and DOUGLAS ARTHUR JOHNSON shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations.

3. If any property subject to forfeiture, as a result of the offenses alleged in Counts One through Thirty-Six of this Superseding Indictment, for which the defendants are convicted,

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a
        third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

26

1    e. has been commingled with other property which cannot be

2          divided without difficulty;

3    it is the intent of the United States, pursuant to 18 U.S.C. §

4    38(d)(2) and 28 U.S.C. § 2461(c), incorporating 21 U.S.C. §

5    853(p), to seek forfeiture of any other property of defendants up

6    to the value of the property subject to forfeiture.

7                    A TRUE BILL.

8

9                    /s/ Signature on file w/AUSA

10                   FOREPERSON

11

12   BENJAMIN B. WAGNER
     United States Attorney
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                    27

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
*vs.*

WILLIAM HUGH WEYGANDT,
JERRY EDWARD KUWATA,
SCOTT HAMILTON DURHAM,
CHRISTOPHER WARREN MACQUEEN,
and DOUGLAS ARTHUR JOHNSON

## S U P E R S E D I N G   I N D I C T M E N T

**VIOLATION(S):** 18 U.S.C. § 38(a) and (b)(1) - Conspiracy to
Commit Fraud Involving Aircraft Parts in Interstate and Foreign
Commerce; 18 U.S.C. § 38(a)(1)(A) - Fraud Involving Aircraft
Parts in Interstate and Foreign Commerce (16 Counts);
18 U.S.C. § 38(a)(1)(C) - Fraud Involving Aircraft Parts in
Interstate and Foreign Commerce (4 Counts);
18 U.S.C. § 1341 - Mail Fraud (15 Counts);
18 U.S.C. § 38(d), and 18 U.S.C. § 981(a)(1)(C),
& 28 U.S.C. § 2461(c) - Criminal Forfeiture

*A true bill,*

*/s/ Signature on file w/AUSA*

*Foreman.*

*Filed in open court this* ___10th___ *day*

*of* ___October___ *, A.D. 20* __12__ _Aw_ ___Clerk___

_Notices to appear to BShe_ — _all Defendants_

___Clerk.___

*Bail, $* _____

## United States v. KUWATA, et al.
## Indictment Penalties

**Penalties on COUNT ONE for the following Defendants:**
**William Hugh WEYGANDT**
**Jerry Edward KUWATA,**
**Scott Hamilton DURHAM,**
**Christopher Warren MACQUEEN, and**
**Douglas Arthur JOHNSON**

VIOLATION: **Conspiracy to Commit Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38(a) and (b)(1)**

PENALTIES: Mandatory minimum of 15 years; or
Fine of up to $500,000; or both fine and imprisonment
Supervised release of at least 3 years up to life

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**Penalties on COUNTS TWO through NINE for the following Defendants:**
**Jerry Edward KUWATA,**
**Scott Hamilton DURHAM,**
**Christopher Warren MACQUEEN, and**
**Douglas Arthur JOHNSON**

VIOLATIONS: **Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38(a)(1)(A)**

PENALTIES: Up to 15 years in prison; or
Fine of up to $500,000; or both fine and imprisonment
Supervised release of at least 3 years up to life

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## Penalties on COUNTS TEN through TWELVE for the following Defendant:
## Douglas Arthur JOHNSON

| | |
|---|---|
| **VIOLATIONS**: | **Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38(a)(1)(C)** |
| PENALTIES: | Up to 15 years in prison; or<br>Fine of up to $500,000; or both fine and imprisonment<br>Supervised release of at least 3 years up to life |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## Penalties on COUNT THIRTEEN for the following Defendant:
## Christopher Warren MACQUEEN

| | |
|---|---|
| **VIOLATION**: | **Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38(a)(1)(C)** |
| PENALTIES: | Up to 15 years in prison; or<br>Fine of up to $500,000; or both fine and imprisonment<br>Supervised release of at least 3 years up to life |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## Penalties on COUNT FOURTEEN for the following Defendant:
## Jerry Edward KUWATA

| | |
|---|---|
| **VIOLATION**: | **Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38 (a)(1)(A)** |
| PENALTIES: | Up to 15 years in prison; or<br>Fine of up to $500,000; or both fine and imprisonment<br>Supervised release of at least 3 years up to life |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## Penalties on COUNT FIFTEEN for the following Defendant:
## Jerry Edward KUWATA

| | |
|---|---|
| **VIOLATION:** | **Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38(a)(1)(A)** |
| PENALTIES: | Up to 15 years in prison; or<br>Fine of up to $500,000; or both fine and imprisonment<br>Supervised release of at least 3 years up to life |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## Penalties on COUNT SIXTEEN for the following Defendant:
## Jerry Edward KUWATA

| | |
|---|---|
| **VIOLATION:** | **Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38(a)(1)(A)** |
| PENALTIES: | Up to 15 years in prison; or<br>Fine of up to $500,000; or both fine and imprisonment<br>Supervised release of at least 3 years up to life |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## Penalties on COUNT SEVENTEEN for the following Defendant:
## Jerry Edward KUWATA

| | |
|---|---|
| **VIOLATION:** | **Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38(a)(1)(A)** |
| PENALTIES: | Up to 15 years in prison; or<br>Fine of up to $500,000; or both fine and imprisonment<br>Supervised release of at least 3 years up to life |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## Penalties on COUNT EIGHTEEN for the following Defendant:
## Christopher Warren MACQUEEN

| | |
|---|---|
| **VIOLATION:** | **Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38(a)(1)(A)** |
| PENALTIES: | Up to 15 years in prison; or<br>Fine of up to $500,000; or both fine and imprisonment<br>Supervised release of at least 3 years up to life |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## Penalties on COUNT NINETEEN for the following Defendant:
## Christopher Warren MACQUEEN

| | |
|---|---|
| **VIOLATION:** | **Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38(a)(1)(A)** |
| PENALTIES: | Up to 15 years in prison; or Fine of up to $500,000; or both fine and imprisonment Supervised release of at least 3 years up to life |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## Penalties on COUNT TWENTY for the following Defendant:
## Christopher Warren MACQUEEN

| | |
|---|---|
| **VIOLATION:** | **Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38(a)(1)(A)** |
| PENALTIES: | Up to 15 years in prison; or Fine of up to $500,000; or both fine and imprisonment Supervised release of at least 3 years up to life |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

## Penalties on COUNT TWENTY-ONE for the following Defendant:
## Christopher Warren MACQUEEN

| | |
|---|---|
| **VIOLATION:** | **Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38(a)(1)(A)** |
| PENALTIES: | Up to 15 years in prison; or Fine of up to $500,000; or both fine and imprisonment Supervised release of at least 3 years up to life |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**Penalties on COUNTS TWENTY-TWO through THIRTY-SIX for the following Defendants:**
**Jerry Edward KUWATA,**
**Scott Hamilton DURHAM**
**Christopher Warren MACQUEEN, and**
**Douglas Arthur JOHNSON,**

VIOLATION:            Mail Fraud in violation of 18 U.S.C. § 1341

PENALTIES:            Up to 20 years in prison; or
                      Fine of up to $250,000; or both fine and imprisonment
                      Supervised release of at least 3 years up to life

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**FORFEITURE ALLEGATION**
VIOLATION:    **18 U.S.C. § 38 (d), 18 U.S.C. § 981 (a) (1) (C) and 28 U.S.C. § 2461 (c) - Forfeiture**
PENALTY:      As stated in the indictment.