1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,          No.  2:11-CR-00429-JAM

12              Plaintiff,

13       v.                             **ORDER GRANTING DEFENDANT
                                        WEYGANDT'S MOTION TO SEVER**
14   WILLIAM HUGH WEYGANDT,

15              Defendant.

16

17        This matter comes before the Court on Defendant William Hugh

18   Weygandt's Motion to Sever the Trial and Conspiracy Charge (Doc.

19   #91) pursuant to Federal Rules of Criminal Procedure 8(b) and 14.

20   The Government opposes the Motion. (Doc. #119). For the reasons

21   set forth below, Defendant's Motion to Sever is granted.

22

23             I.   FACTUAL AND PROCEDURAL BACKGROUND

24        This case arises out of an alleged conspiracy to

25   purposefully disregard Federal Aviation Administration ("FAA")

26   regulations in the repair and overhaul airplane parts, in

27   violation of federal law.

28        According to the Superseding Indictment, WECO Aerospace

1

Systems, Inc. ("WECO") was a certified FAA repair station, with its original facility in Burbank, California since 1974, and a second facility in Lincoln, California since 1994.  Doc. #64 at ¶ 1(c).  WECO was authorized by the FAA "to maintain and rebuild certain aircraft component parts, and to approve the return of the parts to service in accordance with [FAA regulations]."  Id.

By 2005, Defendant was the president and sole owner of WECO.  Doc. #64 at ¶ 1(d).  In 2006, he agreed to sell WECO, and the sale of the company closed in March 2007.  Id.  Defendant continued to work as the president until approximately February 2008.  Id.

On September 29, 2011, the Grand Jury returned an indictment against six WECO employees, Jerry Edward Kuwata, Michael Dennis Maupin, Scott Hamilton Durham, Christopher Warren MacQueen, Douglas Arthur Johnson, and Anthony Zito, on conspiracy and fraud charges.  See Doc. #1 (charging violations of 18 U.S.C. §§ 38 and 1341, in 36 Counts).  Defendants Zito and Maupin subsequently entered guilty pleas to the Indictment and an Information, respectively.  See Doc. #31, 33, 56, 57-58.

Just over a year later, on October 10, 2012, the United States filed the Superseding Indictment.  Doc. #64.  Defendant Weygandt was charged for the first time through the Superseding Indictment, but in all other respects, the Superseding Indictment is virtually identical to the original Indictment.  Compare Doc. #64 with Doc. #1.  Defendant Weygandt is only named in Count 1, the conspiracy charge, of the 36 Count Superseding Indictment.  Doc. #64 at ¶ 2.  The alleged conspiracy began no later than approximately October 26, 2006, and continued until approximately

2

1   February 15, 2008.  Id.

2       Count 1 charges that Defendant Weygandt, together with co-

3   Defendants Kuwata, Durham, MacQueen, and Johnson, "knowingly, and

4   with the intent to defraud, combined, conspired, and agreed with

5   each other . . . to: (a) falsify and conceal material facts

6   concerning aircraft parts; (b) make materially fraudulent

7   representations concerning aircraft parts; (c) make and use

8   materially false writings, entries, certifications, documents,

9   records, data plates, labels, and electronic communications

10  concerning aircraft parts; and (d) export from and import and

11  introduce into the United States, sell, trade, and install on and

12  in aircraft, aircraft parts using and by means of fraudulent

13  representations, documents, records, labels, certificates,

14  depictions, data plates, and electronic communications, all in

15  violation of Title 18, United States Code, Section 38(a)."  Id.

16  at ¶ 2(a)-(d).  The charged "objects of the conspiracy were to

17  defraud the FAA and WECO customers by: (a) Falsifying and

18  concealing material facts regarding the use of unapproved parts

19  used in repairs and overhauls of rotables and converters; (b)

20  Submitting fraudulent [reports] which stated that repairs and

21  overhauls had been done in compliance with FAA regulations when

22  they had not; and (c) Conducting repairs and overhauls of

23  rotables and converters with less expensive and unapproved parts,

24  and without the use of costly required tests and test equipment."

25  Id. at ¶ 3.

26      Defendant is only alleged to have committed one overt act in

27  furtherance of the conspiracy: "On or about August 7, 2007,

28  defendant[ ] Weygandt, and another known [to] the Grand Jury,

3

1   signed the WECO Repair Station Manual/Quality Assurance Manual
2   which failed to disclose . . ." to the FAA a separate facility
3   used by WECO Lincoln to store parts that were used in the
4   questioned overhauls and repairs.  Doc. #64 at ¶ 5(c).  Again,
5   Defendant is not named in any of the other 35 Counts with his co-
6   Defendants.  See id.

7       Within a few weeks of the United States superseding the
8   indictment, Defendant Kuwanta pled guilty to an information.
9   Doc. #85-87.  Subsequently, the remaining Defendants filed
10  several motions attacking the Superseding Indictment and seeking
11  to preclude evidence from the Government's case-in-chief.  See
12  Doc. #71-72, 75, 78.

13      Since being named in this complex matter, Defendant has
14  received over 1 million pages of discovery.  See Doc. #91.

15      On December 5, 2012, Defendant filed the pending Motion to
16  Sever pursuant to Federal Rules of Criminal Procedure 8(b) and
17  14.  Doc. #91.  By stipulation and order, the Court modified the
18  briefing schedule and moved the hearing on all pending defense
19  motions to February 12, 2013.  See Doc. #112.  At the February 12
20  hearing, the Court heard from counsel for Defendant Weygandt,
21  counsel for all remaining co-Defendants, and counsel for the
22  United States on the issues raised in the briefing, then took the
23  matter under submission.

24

25              II.  LEGAL STANDARD

26      A.   Rule 8(b)

27      Federal Rule of Criminal Procedure 8(b) governs joinder of
28  multiple defendants, providing: "The indictment . . . may charge

4

1  2 or more defendants if they are alleged to have participated in

2  the same act or transaction, or in the same series of acts or

3  transactions, constituting an offense or offenses. The defendants

4  may be charged in one or more counts together or separately. All

5  defendants need not be charged in each count."

6      "'Rule 8(b) is construed liberally in favor of joinder[,]'

7  [because] 'the goal of Rule 8(b) is to maximize trial convenience

8  and efficiency with a minimum of prejudice.'" United States v.

9  Sarkisian, 197 F.3d 966, 975 (9th Cir. 1999) (quoting United

10 States v. Sanchez-Lopez, 879 F.2d 541, 550 (9th Cir. 1989) and

11 United States v. Baker, 10 F.3d 1374, 1387 (9th Cir. 1993)).

12     A motion for misjoinder must be granted under Rule 8(b)

13 "unless its standards are met, even in the absence of

14 prejudice[.]" United States v. Lane, 474 U.S. 438, 449 n.12

15 (1986).

16     B.   Rule 14

17     Federal Rule of Criminal Procedure 14(a) provides: "If the

18 joinder of offenses or defendants in an indictment . . . appears

19 to prejudice a defendant or the government, the court may order

20 separate trials of counts, sever the defendants' trials, or

21 provide any other relief that justice requires."  The concern of

22 Rule 14 "is to provide the trial court with some flexibility when

23 a joint trial may appear to risk prejudice to a party[.]" United

24 States v. Lane, 474 U.S. 438, 449 n.12 (1986).

25     Determining whether severance is warranted "is a matter

26 within the trial court's discretion . . . ." United States v.

27 Doe, 655 F.2d 920, 926 (9th Cir. 1981). "The defendant must

28 demonstrate that a joint trial is 'so manifestly prejudicial that

5

1   it outweighs the dominant concern with judicial economy and

2   compels the exercise of the court's discretion to sever.'"  Id.

3   (quoting United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir.

4   1976)).  Indeed, the "burden of demonstrating prejudice is a

5   difficult one . . . ," and motions to sever are seldom granted.

6   Id. at 926 (citing United States v. Campanale, 518 F.2d 352, 359

7   (9th Cir. 1975)).

8

9                        III. OPINION

10      Defendant argues severance is warranted under Federal Rule

11   of Criminal Procedure 8(b) because Defendant was misjoined, and

12   under Rule 14, because Defendant's right to a fair trial will be

13   severely prejudiced if he is not tried separately.  Doc. #91 at

14   3.  The Government responds to each of Defendant's arguments,

15   arguing the extreme remedy of severance is not appropriate in

16   this case.  Doc. #119.  These arguments are discussed below in

17   the order presented by the parties.

18      A.   Defendant was properly joined under Rule 8(b)

19      Defendant argues severance pursuant to Rule 8(b) is

20   necessary because all of the Counts in the Superseding Indictment

21   do not arise out of a common plan or conspiracy.  Doc. #91 at 10.

22   Defendant relies on the fact that there is no overt act alleged

23   in the Superseding Indictment related to his knowledge of the

24   distinct acts charged in Counts 2-36.  Id.  The Government

25   responds by arguing it is clear that Rule 8(b)'s requirements

26   have been satisfied from the Superseding Indictment, as "the

27   Defendant is implicated in a series of transactions that form the

28   conspiracy charged in Count 1."  Doc. #119 at 5.

1    The question of whether a party was properly joined under

2    Rule 8(b) can be resolved "from the face of the indictment."

3    United States v. Jawara, 474 F.3d 565, 573 (9th Cir. 2007).

4    Indeed, "'because Rule 8 is concerned with the propriety of

5    joining offenses in the indictment, the validity of the joinder

6    is determined solely by the allegations in the indictment.'"   Id.

7    at 572 (quoting United States v. Terry, 911 F.2d 272, 276 (9th

8    Cir. 1990)).

9    As the Government argues, the acts alleged in the indictment

10   are part of a broad, criminal scheme that occurred at WECO over

11   many years.   See Doc. #119 at 4-6.   Although Defendant is not

12   charged in Counts 2-36, the conduct alleged in those Counts can

13   be said to "flow directly from" the charged conspiracy.   See

14   Jawara, 474 F.3d 574-75 (quoting United States v. Whitworth, 856

15   F.2d 1268, 1277 (9th Cir. 1988)).   In construing the Superseding

16   indictment "liberally in favor of joinder," as this Court is

17   required to do, the Court finds the Defendant's arguments of

18   misjoinder must fail.   See United States v. Sarkisian, 197 F.3d

19   966, 975 (9th Cir. 1999) (quotations and citations omitted).   The

20   Superseding Indictment discusses Defendant's authority and role

21   as president of WECO during the relevant period of the alleged

22   fraud.   See Doc. #64.   These allegations are part of the overall

23   scheme "to defraud the FAA and WECO customers by performing

24   repairs and overhauls which did not comply with FAA regulations."

25   Id.   Accordingly, the Court finds Defendant was properly joined

26   in the conspiracy charge of the Superseding Indictment because

27   the allegations contained therein support the Government's theory

28   that all the named Defendants "participated in the . . . same

7

1   series of acts or transactions, constituting [the Conspiracy

2   charge].”  Fed. R. Crim. P. 8(b).

3       Defendant makes other arguments regarding prejudice; these

4   are better addressed under Rule 14 since the Court must only look

5   to the face of the indictment in determining whether Rule 8 has

6   been satisfied.  See United States v. Jawara, 474 F.3d 565, 572-

7   73 (9th Cir. 2007).

8       For the aforementioned reasons, the Court denies Defendant's

9   Motion to Sever under Rule 8(b) and turns to Defendant's Motion

10  under Rule 14.

11      B.   Severance is warranted under Rule 14

12      Defendant argues there is a serious risk that his right to a

13  fair trial will be compromised by having to go to trial with the

14  remaining co-Defendants. The Court agrees.  See Doc. #91 at 12-

15  17.  As discussed in detail below, there are several reasons a

16  joint trial "appears to prejudice" the Defendant: there is a

17  serious risk of "spillover evidence," and it will result in the

18  presentation of mutually antagonistic defenses.  The arguments

19  regarding judicial economy cut both ways, such that the potential

20  prejudice of Defendant in this case considerably outweighs the

21  concern for judicial economy.

22      Defendant argues he will be severely prejudiced by a joint

23  trial because he will be forced to participate in a trial where

24  there will be evidence put on against his co-Defendants regarding

25  35 Counts he is not named in.  Doc. #91 at 13-15.  Indeed,

26  because this is a complex case, the evidence presented by the

27  Government to substantiate the other Counts in this case will

28  likely be considered by the jury as evidence against Defendant.

1    Id.  In conjunction with his argument regarding spillover

2    evidence, Defendant also avers that the jury will be overwhelmed,

3    generally, with the amount of evidence presented in this

4    complicated case, causing a great risk of "incoherency and

5    prejudice."  Doc. #91 at pg. 14.

6        As stated by the Ninth Circuit, "[t]he prime consideration

7    in assessing the prejudicial effect of a joint trial is whether

8    the jury can reasonably be expected to compartmentalize the

9    evidence as it relates to separate defendants, in view of its

10   volume and the limited admissibility of some of the evidence."

11   United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir. 1980)

12   (citations omitted).  The Government argued in its brief, and to

13   the Court on February 12, that most of the evidence in this case

14   is relevant to Count 1, charged against all Defendants.  See Doc.

15   #119 at 9.  It is the Government's position that it is unlikely

16   there will be a great deal of additional evidence put on to

17   substantiate Counts 2-35, and therefore, the joint trial will not

18   be manifestly prejudicial to Defendant.  Id.  Defendant, on the

19   other hand, notes that the amount of documents in this case

20   demonstrates that there will be at least several days of

21   additional evidence put on in this case that has no relevance to

22   the charge against Defendant.  See Transcript of Hearing,

23   February 12, 2012, Doc. #124.  Defendant's argument is

24   persuasive.  There will be a great deal of evidence put on in

25   this case that only relates to charges not levied against

26   Defendant.  Specifically, there are 35 substantive counts which

27   the Government must prove against other Defendants with evidence

28   that does not relate to Defendant Weygandt.  It is very likely

1   that not only will the jury be confused due to the voluminous

2   amount of materials, but it will difficult, if not impossible,

3   for the jurors to ignore that evidence in considering Defendant's

4   role in this case.  See Zafiro v. United States, 550 U.S. 534,

5   539 (1993).  This is especially true when, as here, "defendants

6   are tried together in a complex case and they have markedly

7   different degrees of culpability . . . ."  Id. (citing Kotteakos

8   v. United States, 328 U.S. 750, 774-75 (1946)).

9       The Court must weigh the concern with manifest prejudice

10  against the consideration of judicial economy.  See United States

11  v. Doe, 655 F.2d 920, 926 (9th Cir. 1981).  The Government again

12  argues that the majority of the evidence that will be presented

13  at trial relates to Count 1; therefore, severing Defendant is not

14  in the interest of judicial economy because it will result in two

15  separate, but almost identical trials.  Doc. #119 at 6-11.  The

16  reality in this case is that Defendant was indicted more than a

17  year after his co-Defendants and therefore has not had the

18  necessary time to prepare for trial in this case.  If the Court

19  does not sever Defendant, the case will have to be continued to

20  allow Defendant adequate time to prepare for trial.  If the

21  severance is granted, the co-Defendants can proceed to trial in

22  April.  Although there may be some overlap in the evidence, the

23  concern for judicial economy in this case is minimized due to the

24  fact that the trial would have to be dealyed.  Thus, in balancing

25  the concern for judicial economy with the great likelihood of

26  prejudice to Defendant, the Court finds the prejudice to

27  Defendant in participating in a joint trial greatly outweighs any

28  concern with judicial economy.  Cf. United States v. Doe, 655

10

1   F.2d 920, 926 (9th Cir. 1981).

2         Next, Defendant argues that he and the co-defendants set to

3   be tried will present "mutually antagonistic" defenses.  Doc. #91

4   at 15-17.  As correctly stated by the Government, mutually

5   antagonistic defenses only warrant severance when "the core of

6   the codefendant's defense is so irreconcilable with the core of

7   the [moving defendant's] own defense that the acceptance of the

8   codefendant's theory by the jury precludes acquittal of the

9   defendant."  <u>United States v. Throckmorton</u>, 87 F.3d 1069, 1072

10  (9th Cir. 1996).  The Government argues that the defenses will

11  potentially be inconsistent, but not irreconcilable such that a

12  severance is warranted.  Doc. #119 at pg. 11-13.  However, at the

13  February 12 hearing, the Defendants were all in agreement that

14  there was a core conflict between the defenses they intend to

15  present at trial.  Specifically, Defendant represented to the

16  Court that he will argue that his co-Defendants are solely

17  responsible for any fraud committed at WECO, while the co-

18  Defendants represented to the Court that they all intend to argue

19  Defendant is solely responsible for the crimes committed in this

20  case.  While the Court has not received evidence on this issue,

21  counsels' representations are enough to raise a serious concern

22  that the defenses will be mutually exclusive, causing great

23  prejudice to Defendant should he be tried with his co-defendants.

24  <u>See</u> <u>United States v. Tootick</u>, 952 F.2d 1078 (9th Cir. 1991).

25  This, coupled with the prejudice discussed above, leads the Court

26  to conclude that severance is warranted under the particular

27  circumstances of this case.

28        Finally, Defendant argues that a joint trial will jeopardize

11

1   his ability to seek exculpatory testimony from the other

2   Defendants in this case.  Doc. #91 at pg. 17.  The Government is

3   correct in arguing that in order to succeed on a Motion to Sever

4   on this basis, the Defendant must establish that his co-

5   Defendants would actually testify and their testimony would be

6   favorable to him.  See Doc. #119 (citing United States v. Vigil,

7   561 F.2d 1316 (9th Cir. 1977)).  Defendant has failed to make

8   this showing; Defendant's arguments are purely speculative, and

9   therefore, the Court denies Defendant's Motion to Sever on this

10  basis.

11      The United States has argued that the proper remedy in this

12  case is to use curative instructions if the evidence at trial is

13  potentially prejudicial to Defendant.  Doc. #91 at 10-11.  While

14  this is one of the remedies available to the Court in considering

15  a Motion to Sever, the Court finds that the risk of prejudice is

16  too great to allow the trial to proceed for the reasons stated

17  above.  Accordingly, the Court exercises its discretion in

18  finding that severance is warranted.  See United States v. Doe,

19  655 F.2d 920, 926 (9th Cir. 1981).

20      In sum, the Defendant has demonstrated that the prejudice in

21  this case goes far beyond what is necessarily inherent in a

22  multi-defendant case.  Cf. United States v. Ford, 632 F.2d 1354,

23  1373 (9th Cir. 1980) (overruled on other grounds by United States

24  v. DeBright, 730 F.2d 1255 (9th Cir. 1984)).  Indeed, it appears

25  continuing with a joint trial would be so manifestly prejudicial

26  to Defendant that it outweighs any concern this Court has for

27  ///

28  ///

12

1  judicial economy.  Accordingly, the Court finds that Defendant's
2  Motion to Sever pursuant to Rule 14 should be granted.

3

4                              IV. ORDER

5       After carefully considering the papers submitted in this
6  matter, and the oral arguments of counsel for both parties on the
7  issues raised in the briefs, it is hereby ordered that
8  Defendant's Motion to Sever (Doc. #91) is GRANTED.  It is
9  furthered ordered that the trial date as to Defendant Weygandt is
10  hereby vacated.  All scheduling as to Defendant Weygandt will be
11  addressed at the next status conference.

12

13       IT IS SO ORDERED.

14  Dated: March 3, 2013                  _____
15                                        JOHN A. MENDEZ,
                                          UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28