UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WILLIAM HUGH WEYGANDT,<br><br>　　　　Defendant. | No.  No. 2:11-CR-00429 JAM<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL** |

Presently before the Court is Defendant William Hugh Weygandt's ("Defendant") Renewed Rule 29 Motion for Judgment of Acquittal (Doc. #247).  The Government opposes the motion (Doc. #257) and Defendant replied (Doc. #270).  For the reasons set forth below, Defendant's Motion for Judgment of Acquittal is denied.[1]

　　　　　　I.　FACTUAL AND PROCEDURAL BACKGROUND

　　On October 10, 2012, Defendant was indicted on a single count for Conspiracy to Commit Fraud Involving Aircraft Parts in Interstate and Foreign Commerce in violation of 18 U.S.C. § 38 (Doc. #64).  This crime arises out of Defendant's role as President and owner of WECO Aerospace Systems, Inc. ("WECO"), an

---

[1] This matter was determined to be suitable for decision without oral argument.  See United States v. Green, 89 F.3d 657, 660 (9th Cir. 1996).

1

aviation repair station.  The Superseding Indictment alleges that Defendant conspired with various WECO employees to defraud the Federal Aviation Administration ("FAA") and WECO customers through improper repairs and overhauls on parts contrary to the representations made on the FAA Form 8130s ("8130s").  Following a three week jury trial, a guilty verdict was returned on Count I on November 4, 2013 (Doc. #260).

## II.  OPINION

### A.  Legal Standard

Federal Rule of Criminal Procedure 29(a) ("Rule 29(a)") "requires the trial court to grant a motion for judgment of acquittal 'if the evidence is insufficient to sustain a conviction.'"  United States v. Hazeem, 679 F.2d 770, 772 (9th Cir. 1982).  Specifically, the court determines if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. VonWillie, 59 F.3d 922, 928 (9th Cir. 1995).  "The district court's function in reviewing a defendant's motion for acquittal is quite narrow.  The court, after viewing the evidence in the light most favorably to the government, must determine whether the jury could reasonably find the defendant guilty beyond a reasonable doubt."  United States v. Bernhardt, 840 F.2d 1441, 1448 (9th Cir. 1988).  "[I]t is the jury's exclusive function to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts."  Id. (citations omitted).  Furthermore, pursuant to Rule 29(b), "If the Court reserves decision, it must decide the motion on the basis of the

2

evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). In this case, the Court reserved ruling on the motion after the close of all the evidence in this case.

### B. Discussion

Defendant moves for acquittal on Count I, arguing that the evidence was insufficient for a rational juror to conclude beyond a reasonable doubt that Defendant is guilty of conspiracy under 18 U.S.C. § 38. The Government counters that there was ample evidence to support Defendant's conviction.

To sustain a conviction in this case, the Government must prove the following: (1) that beginning no later than on or about October 26, 2006, and ending on or about February 15, 2008, there was an agreement between two or more persons to commit fraud involving aircraft parts in interstate or foreign commerce, and (2) that the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it. 18 U.S.C. § 38(a)(1)(A).

#### 1. Agreement to Commit Fraud

The Government does not have to prove that an explicit agreement existed. United States v. Cloud, 872 F.2d 846, 852 (9th Cir. 1989). The agreement "may be inferred from the defendant's acts pursuant to a fraudulent scheme or from other circumstantial evidence." Id. (citations omitted). "An inference of the existence of a conspiratorial agreement may also be drawn if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." Id. (citations and internal quotations omitted); see also United States v. Hubbard, 96 F.3d

1223, 1226 (9th Cir. 1996) (same).  Therefore, "[t]he agreement need not be explicit; it is sufficient if the conspirators knew or had reason to know of the scope of the conspiracy and that their own benefits depended on the success of the venture." United States v. Sullivan, 522 F.3d 967, 976 (9th Cir. 2008) (citations omitted).

Defendant does not dispute the existence of fraudulent behavior on the part of some WECO employees.  Instead, he argues that there is no evidence of an agreement to commit fraud, relying on the testimony of several witnesses who testified that they neither expressly agreed to defraud customers or the FAA nor were ordered to do so.  Mot. at 7-8.  However, as the Government argues, conspiratorial agreements may be implicitly evidenced by a "concert of action."  Defendant argues that the "concert of action" line of cases do not apply in this case because the parties did not work together with a shared understanding and because an inference of an agreement is permissible only when the nature of the acts would logically require coordination and planning.  Reply at 23 (citing United States v. Iriarte-Ortega, 113 F.3d 1022, 1024 opinion amended on denial of reh'g, 127 F.3d 1200 (9th Cir. 1997)).  However, evidence of coordination and a shared understanding exists here.

The Ninth Circuit has held, "Coordination between conspirators is strong circumstantial proof of agreement; as the degree of coordination between conspirators rises, the likelihood that their actions were driven by an agreement increases." Iriarte-Ortega, 113 F.3d at 1024.  In this case, a jury could reasonably have inferred a conspiratorial agreement from all the

4

coordinated actions.  Sufficient evidence was presented at trial to show that Defendant knew WECO did not have the equipment to do the tests called for in the component maintenance manuals ("CMMs").  See e.g. Testimony of Howell at 20-24.  Nevertheless, WECO employees continued to certify in 8130s that aircraft parts were overhauled in accordance with the CMMs.  See id. at 23-24.  In addition, there was evidence establishing that Defendant had a repeated pattern of ignoring requests for proper testing equipment even though he was the only person at WECO authorized to purchase equipment.  See Testimony of Tony Zito, Doc. #250, at 20-24; Testimony of Michael Maupin, Doc. #253, 107-08.  For example, Tony Zito testified that he stopped requesting equipment because Defendant routinely denied the requests; Matthew Mortimer testified that after Defendant declined to buy equipment, he understood that he was to do his job without the equipment; and Jerry Kuwata testified he presented Defendant with a quote on a varidrive, which was never purchased.  Testimony of Tony Zito at 23-24; Testimony of Matthew Mortimer, Doc. #241, at 66; Testimony of Jerry Kuwata, Doc. #266, at 69-70.  Defendant argues that this disagreement over the equipment shows that Defendant and the coconspirators opposed each other and consequently, there was no shared understanding.  However, this argument is unpersuasive because the common purpose was not whether or not to purchase equipment; it was to defraud the FAA and WECO customers by skipping required tests due to the lack of equipment.  Therefore, the "concert of action" consisted of Defendant refusing to buy the required equipment, allowing his employees to perform tests without the equipment, and the fraudulent representations that

the required tests were properly performed. This scheme required coordination and participation of several people. Moreover, by refusing to buy the required testing equipment, Defendant acted pursuant to the fraudulent scheme and he benefitted from the scheme by saving money, which is enough to show an agreement. See Cloud, 872 F.2d at 852; Sullivan, 522 F.3d at 976.

Accordingly, there was sufficient evidence to show an implicit agreement to commit fraud between Defendant and the coconspirators.

### 2. Knowledge of at Least One of Its Objects and Intent to Help Accomplish It

Defendant argues that the Government failed to present sufficient evidence to show that he became a member of the conspiracy with the requisite knowledge and intent to defraud. Mot. at 11-12. Defendant relies on three cases: United States v. Hernandez, 301 F.3d 886 (8th Cir. 2002); United States v. Esparza, 876 F.2d 1390 (9th Cir. 1989); and United States v. Estrada-Macias, 218 F.3d 1064 (9th Cir. 2000). Reply at 6-7.

In Hernandez, the Eighth Circuit upheld the district court's decision to set aside a verdict for insufficient evidence where the defendant was arrested in a sting against her boyfriend, but there was no evidence to suggest she was aware of the drugs and drug paraphernalia found hidden in her home nor was there any other evidence linking her with drug use or drug dealing. Hernandez, 301 F.3d at 890-91. The court held that the evidence led only to conjecture of guilt and "conjecture is something less than an inference reasonably drawn from the evidence." Id. In Esparza, the court held that there was insufficient evidence to

1   support a conviction for conspiracy where the defendant was
2   present in the passenger seat of a moving van but there was no
3   evidence that the defendant knew that aliens were hidden in the
4   van.  Esparza, 876 F.2d at 1392-93 ("Considered in its factual
5   context, Esparza's presence as a passenger in the Dodge is not a
6   sufficient basis to infer that he knew of the conspiracy or
7   participated in it.")  Finally, in Estrada-Macias, the Ninth
8   Circuit held that there was insufficient evidence to support the
9   defendant's conviction for conspiracy to manufacture
10  methamphetamine because the evidence showed that the defendant
11  was near the manufacturing site and knew about the manufacturing
12  but not that he actually participated in the conspiracy.  218
13  F.3d at 1066-68.  The court clarified that "[m]ere casual
14  association with conspiring people is not enough."  Id. at 1066
15  (citation omitted).

16       These three cases establish that mere presence or mere
17  association is not enough to show that a person is a member of a
18  conspiracy.  Here, however, Defendant's assertion that he was
19  merely present at WECO or merely associated with the
20  coconspirators is without merit.  There was strong circumstantial
21  evidence that Defendant was intimately familiar with the aircraft
22  parts repair business and WECO in particular: He inherited WECO
23  from his father, worked his way up, and as the President and
24  owner of WECO, he was involved in the day-to-day operations,
25  often providing input on work orders and regularly attending the
26  daily production meetings.  See Testimony of Michael Maupin, Doc.
27  #251, at 38, and Doc. #253, at 91-92, 113-14; Testimony of Jerry
28  Kuwata, Doc. #265, at 20-23; Testimony of William Howell, Doc.

7

#258, at 29-30; Testimony of Scott Durham, Doc. #249, at 34-35, 45-47.  There was also evidence that Defendant knew about 8130s and their importance in the aviation industry.  See Gov't Ex. 603 (email from Defendant discussing the need to include 8130s); Testimony of Howell, Doc. #258, at 11 (acknowledging that Defendant was authorized to sign 8130s).  In addition, as mentioned above, the evidence showed that Defendant was aware that WECO was missing the equipment necessary to conduct tests pursuant to the CMMs.  Therefore, there was sufficient evidence for a rational jury to infer that Defendant, who was a sophisticated businessman with extensive experience, knew that the required tests were not being performed and the 8130s were being falsely certified.  Moreover, this evidence shows that Defendant was sophisticated enough to distance himself from the criminal activity that was occurring, even though he permitted and encouraged it.  Therefore, unlike the defendants in Hernandez, Esparza, and Estrada-Macias, Defendant in this case was neither merely present at WECO nor merely associated with the coconspirators.  Rather, Defendant was at the center of this conspiracy.

Defendant also argues that there is no evidence that he intended to defraud the FAA or WECO customers.  However, as mentioned above, there was sufficient evidence to establish that Defendant knew the 8130s were being falsely certified but he nonetheless did nothing to remedy the situation, such as buying the required equipment or shutting down the facilities, even though he was the only one in the position to do so.  Defendant knowingly continued on this course of action until he sold WECO

to Gulfstream and he stated that they could finally get the testing equipment now that they had deeper pockets, referring to Gulfstream.  Testimony of Michael Maupin, Doc. #253, 81, 126-127.  Therefore, the jury reasonably inferred from Defendant's conscious and calculated decision not to buy the necessary equipment that he acted with the intent to defraud.  United States v. Pelisamen, 641 F.3d 399, 409 (9th Cir. 2011) ("It is settled law that intent to defraud may be established by circumstantial evidence.") (quoting United States v. Rogers, 321 F.3d 1226, 1230 (9th Cir. 2003)).  Defendant points to the evidence that he purchased equipment and invested in WECO to show that he did not have the requisite intent; however this evidence is insufficient to overcome the Government's proof.  Indeed evidence that Defendant spent money on such items as a trash compactor, the move to a new facility and improvements to that facility carries little weight on the intent issue and does not address the central issue raised by the Government, i.e., why didn't Defendant purchase the equipment he knew that WECO needed to insure that airplane parts were being repaired and overhauled as required by law.  Thus, despite Defendant's assertions, there was ample circumstantial evidence of Defendant's knowledge of and intent to defraud the FAA and WECO customers.[2]

---

[2] In his Reply, Defendant raises for the first time what appears to be a statute of limitations argument.  Reply at 24-25.  The Court may not consider new arguments raised in a Reply brief.  Even if the Court were to consider this argument, it is without merit.  The evidence in this case clearly demonstrates that the conspiracy to defraud continued up through the date of Defendant's termination by Gulfstream in February 2008.  See Government's Opposition at pp. 8-11.

Accordingly, taking all of this evidence together and viewing it in the light most favorable to the Government, the Court finds that there was relevant and substantial evidence from which the jury could reasonably have found and did find Defendant guilty beyond a reasonable doubt.

### III.  ORDER

For the reasons discussed above, Defendant's Motion for Judgment of Acquittal is denied.

IT IS SO ORDERED.

Dated: November 19, 2013

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

10